UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL LANTINO, JOANNE CABELLO, on behalf of themselves and all others similarly situated,

               Plaintiffs,

    v.

CLAY LLC, THE GYM AT GREENWICH, LLC, THE GYM AT PORT CHESTER INC., THE GYM AT UNION SQUARE, LLC, SETH HIRSCHEL, STEFAN MALTER, and BARNET LIBERMAN,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

No.: 1:18-cv-12247 (AT) (SDA)

---

**DEFENDANTS' MEMORANDUM OF LAW OPPOSING PLAINTIFFS' MOTION FOR ENTRY OF THE CONSENT JUDGMENT**

---

Dated: New York, New York
         May 6, 2020

LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830

*Attorneys for Defendants The Gym at Greenwich, LLC,*
*The Gym at Port Chester Inc., The Gym at Union Square, LLC,*
*Seth Hirschel, Stefan Malter, and Barnet Liberman*

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ............................................................................................2

LEGAL ARGUMENT ...................................................................................................7

I.   DEFENDANTS' PERFORMANCE UNDER THE AGREEMENT
     SHOULD BE EXCUSED ....................................................................................7

     1.   The Means of Performance is Impossible. .....................................8

     2.   The Unanticipated COVID-19 Pandemic Made
          Performance Under the Agreement Impossible ..............................8

CONCLUSION ............................................................................................................11

## TABLE OF AUTHORITIES

CASES

Federal Cases

*Inter-American Dev. Bank v. Nextg Telecom Ltd.*,
503 F.Supp.2d 687 (S.D.N.Y. 2007) ................................................................................9

*United States v. Gen. Douglas MacArthur Senior Village, Inc.*,
508 F.2d 377 (2d Cir. 1974) .............................................................................................9

*Vemics, Inc. v. Meade*,
06-cv-8716, 2011 U.S. Dist. LEXIS 72611 (S.D.N.Y. June 30, 2011) ........................7, 8

*ZBD Constructors, Inc. v. Billings Generation, Inc.*,
09-cv-6657, 2011 U.S. Dist. LEXIS 40433 (S.D.N.Y. Mar. 25, 2011) ...............7, 8, 9, 10

State Cases

*Moyer v. Little Falls*,
134 Misc. 2d 299 (N.Y. Sup. Ct. Herk. Cty. Dec. 29, 1986) ......................................9, 10

*National Farmers Union Property & Casualty Co. v. Fuel Recovery Co.*,
432 N.W.2d 788 (Minn. Ct. App. 1988) ..........................................................................9

Defendants The Gym at Greenwich, LLC, The Gym at Port Chester Inc., The Gym at Union Square, LLC, Seth Hirschel, Stefan Malter and Barnet Liberman (the "Defendants") submit this memorandum of law opposing Plaintiffs' motion for entry of the consent judgment (the "Motion").

## PRELIMINARY STATEMENT

When they reached the $300,000 classwide settlement during the September 2019 settlement conference, neither the Plaintiffs nor Defendants were talking about a possible COVID-19 global pandemic or that Governor Cuomo might issue an Executive Order shutting down all non-essential businesses in the State of New York. Nobody was wearing masks. And everybody was shaking hands. The settlement conference focused on, rather, Defendants' precarious financial condition and resolving Plaintiffs' claims. But these unforeseen events happened and have had disastrous financial consequences for the Defendants: drying up the revenue sources they relied on to make the settlement payments. These unforeseen events have accordingly made it impossible for them to continue making the payments under the settlement agreement.

Defendants have made every payment under the agreement from November 2019 to March 2020. They were able to make these payments by borrowing money from family members and using funds from their limited revenue resources.

This all changed when Governor Cuomo issued the March 22, 2020 "PAUSE" Executive Order that, *inter alia*, shut down all non-essential businesses to address the COVID-19 pandemic. These events have made it impossible for Defendants to make the settlement payments because all of the funds they were using to pay the Plaintiffs are no longer available: their families will no longer lend them money; the PAUSE Order shut

-1-

down the businesses from which they were receiving revenue; and they have no other funds with which to make the settlement payments. These unforeseen events, together with Defendants' financial condition, have made it impossible for them to comply with the agreement. Their performance under the agreement should, therefore, be excused under the common law doctrine of impossibility.

To be sure, Defendants do not seek to be forever excused from their performance under the agreement. They, rather, seek to make their payments when it is economically practicable: 60 days after the PAUSE Executive Order on non-essential businesses is lifted. And under the doctrine of impossibility this remedy is available to them. Plaintiff's Motion should, accordingly, be denied.

## STATEMENT OF FACTS

A.  Procedural History

Defendants operated two fitness facilities, one located in the Union Square neighborhood of New York City and one in Port Chester, New York.[1] Plaintiffs worked for Defendants in a variety of positions, including personal trainers, spa workers, and group exercise instructors.[2]

On December 27, 2018, Plaintiffs Michael Lantino and Joanne Cabello ("Named Plaintiffs") filed a putative Class and Collective Action Complaint on behalf of themselves and other employees of Defendants who were similarly situated (the "Complaint").[3] They allege that Defendants failed to pay them any wages since October 1, 2018; routinely failed to deliver them their paychecks on their regularly-scheduled

---

[1] Dkt. No. 80 ¶ 4.
[2] Dkt. No. 1. ¶¶ 25, 27; Dkt. Nos. 71-77.
[3] Dkt. No. 1.

paydays; and regularly delivered them paychecks which bounced when they deposited them in the bank.[4]

On September 9, 2019, the parties attended a settlement conference before Your Honor, at which the parties agreed to resolve the claims on a class-wide basis for $300,000.00 to be paid over two years.[5] These terms were then memorialized in an October 3, 2019 settlement agreement (the "Agreement"), which the Court granted preliminary and final approval.[6]

B.   The Agreement

Under the Agreement, Defendants are required to pay Plaintiffs and their counsel the total sum of $300,000.00 over a period of 2 years.[7] Defendants were required to make an initial payment of $50,000.00, which was due "[w]ithin 10 days of the Court entering its Order approving the Agreement[.]"[8] All subsequent payments were to be paid in equal monthly installments of $8,695.65 and were due on the first date of each month.[9]

The Agreement provides that "Defendants will be in default under the Agreement if . . . (i) they fail to make in full any of the Settlement Payments in Paragraph 4 in accordance with the terms of this Agreement . . . and (ii) [they] have still failed to make any of the required Settlement Payments . . . within 5 business days of Plaintiffs sending Defendants a Notice of Default[.]"[10]

---

[4] Complaint ¶¶ 45, 47, 51, 52, 53, 54.
[5] September 9, 2019 Text Order.
[6] Dkt. Nos. 91, 93.
[7] Dkt. No. 92 ¶ 4.
[8] *Id.* ¶ 4(b).
[9] *Id.* ¶ 4(c).
[10] *Id.* ¶ 5(a).

Upon counter-executing the Agreement, Defendants executed a consent judgment in the amount of $1,000,000.00, less any payments already paid under the Agreement.[11] The Agreement provides that [i]f Defendants are in Default, then [they] agree to the jurisdiction of the Court entering the Consent Judgment . . . [and] Plaintiffs' Counsel may enter the Consent Judgment, without further notice, against Defendants if they are in Default."[12]

C.  Defendants' Inability to Make the April Payment Was Due to Circumstances that Objectively Could Not Have Been Foreseen.

From November 19, 2019 to March 5, 2020, Defendants made every settlement payment under the Agreement.[13] Shortly thereafter, the first case of COVID-19 was reported in New York. On March 7, New York State Governor Andrew Cuomo declared a State disaster emergency for the entire State of New York due to the COVID-19 pandemic.[14] On March 22, Governor Cuomo issued an Executive Order that put New York "on PAUSE," requiring, *inter alia*, all non-essential workers to work from home (the "PAUSE Order").[15]

Rewinding to the September 2019 settlement conference and the subsequent negotiations that culminated with the October 2019 Agreement, Defendants could not have foreseen the global pandemic or the PAUSE Order and the unforeseen catastrophic economic consequences they would have on them, their clients, their businesses, and their families. Defendant Hirschel, for example, has been greatly affected. He,

---

[11] Dkt. No. 92, pp. 50-54.
[12] Dkt. No. 92 ¶¶ 5(b), 5(c).
[13] Dkt. No. 99 ¶ 10.
[14] https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york.
[15] https://coronavirus.health.ny.gov/new-york-state-pause.

previously, was receiving limited income as a self-employed consultant.[16] This income was so minimal it did not cover his living expenses or the various settlement agreements related to Defendants' failed health club businesses.[17] He was only able to make the settlement payments by using funds from his limited income and by borrowing funds from his family.[18] As a direct result of COVID-19, however, he no longer makes any income from his consulting job because all of the businesses for which he does consulting are closed due to the PAUSE Order.[19] Further, his family will no longer lend him the funds that previously enabled him to make the settlement payments because they have also been impacted by COVID-related losses.[20] He is also no longer able to pay any of his bills and has requested and received forbearance from most vendors and creditors.[21]

Defendant Liberman has similarly been affected by the COVID pandemic. Prior to it, his only revenue source was rent he received from an Equinox health club, which he relied upon to fund the settlement payments.[22] As a direct result of the pandemic, the government mandated that the health club be closed and Equinox, in turn, informed Defendant Liberman that it would not make any of its rent payments and, in fact, did not make its April payment.[23] He, accordingly, has no source of revenue or income other than social security payments and the economic impact payment he received from the Federal

---

[16] The May 5, 2020 Declaration of Seth Hirschel submitted in opposition to the Motion ("Hirschel Dec.") ¶ 2.
[17] *Id*.
[18] *Id*.
[19] *Id*. ¶ 3.
[20] *Id*.
[21] *Id*. ¶ 4.
[22] The May 5, 2020 Declaration of Barnet Liberman submitted in opposition to the Motion ("Liberman Dec.") ¶¶ 3, 4.
[23] *Id*. ¶ 5.

government on May 5, 2020.[24] Neither he nor his wife has any savings, life insurance, retirement funds, 401(K) plan, annuities or any kind of securities.[25] He also has a $19,000,000.00 judgment against him from a case filed in Nevada, a $5,000,000.00 obligation owed to the Internal Revenue Service, and numerous loans in default.[26]

Defendant Malter has also been greatly impacted by the pandemic. On March 18, 2020, his wife—an NYC physician—contracted COVID-19, leaving him to be the sole caretaker of their children.[27] On March 19, he received partial compensation for work he performed for his largest construction management client in February 2020.[28] On the following day, March 20, that client told him that it would be asking its lender for a forbearance agreement due to the PAUSE Order mandating all non-essential construction projects being halted.[29] It further informed him that he should not expect additional funds from the project until it sorted out this matter and construction projects were permitted to resume.[30] Malter was summarily informed that no further draws would be funded, including for work that was completed and ongoing.[31] He, accordingly, has not been compensated for work he performed in March or April.[32] As the calendar has turned to May, all of his credit cards and personal lines of credit are fully drawn, and he has

---

[24] *Id.* ¶ 7.
[25] *Id.* ¶ 8.
[26] *Id.* ¶ 2.
[27] The May 6, 2020 Declaration of Stefan Malter submitted in Opposition to the Motion ("Malter Dec.") ¶ 2.
[28] *Id.* ¶ 3.
[29] *Id.* ¶ 4.
[30] *Id.*
[31] *Id.*
[32] *Id.*

stopped paying his mortgage and most other bills.[33] He was relying on the revenue from the construction project to fund the settlement payments in this matter.[34]

Despite Defendants' economic hardships, they are committed to resuming payments in accordance with the Agreement as soon as economically practicable.[35] That is, once the PAUSE Order is lifted and businesses resume.

LEGAL ARGUMENT

I. DEFENDANTS' PERFORMANCE UNDER THE AGREEMENT SHOULD BE EXCUSED UNDER THE COMMON LAW DOCTRINE OF IMPOSSIBILITY

Defendants should be excused from their financial obligations under the Agreement because the means of performance are objectively impossible as a result of the COVID-19 pandemic and the PAUSE Order. Parties should be excused from performance under a contract or agreement when (1) "the destruction of the subject matter of the contract or the means of the performance makes performance objectively impossible," and (2) "the impossibility [is] produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *ZBD Constructors, Inc. v. Billings Generation, Inc.*, 09-cv-6657, 2011 U.S. Dist. LEXIS 40433, at *28 (S.D.N.Y. Mar. 25, 2011) (quoting *Kel Kim Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (N.Y. 1987)) (internal quotations omitted); *see also Vemics, Inc. v. Meade*, 06-cv-8716, 2011 U.S. Dist. LEXIS 72611, at *14-15 (S.D.N.Y. June 30, 2011). Both criteria are met here.

---

[33] *Id*. Defendants are likewise far behind on their payment obligations to counsel.
[34] *Id*. ¶ 5.
[35] Hirschel Dec. ¶¶ 5-6; Liberman Dec. ¶ 6; Malter Dec. ¶ 6.

1. The Means of Performance Is Impossible

Defendants meet the first criteria of the doctrine of impossibility. Their ability to perform under the Agreement is objectively impossible. *See ZBD Constructors, Inc.*, 2011 U.S. Dist. LEXIS 40433, at *28; *Vemics, Inc.*, 2011 U.S. Dist. LEXIS 72611, at *14-15.

Performance under the Agreement is impossible because the funding sources Defendants relied on to make the settlement payments are no longer available to them as a result of the pandemic and the PAUSE Order; Defendant Hirschel no longer receives any income, and his family members are unable to lend him money; Defendant Liberman is no longer receiving rent payments from a tenant, which was his only revenue source;[36] and Defendant Malter, whose wife is battling COVID-19, is no longer being paid on construction projects from his largest construction client.[37] Defendants do not have any other funds with which to fund the settlement payments and it is, therefore, impossible for them to comply with the Agreement.

2. The Unanticipated COVID-19 Pandemic and the PAUSE Order Made Performance Under the Agreement Impossible

"New York courts are clear that the doctrine of impossibility applies [] when the impossibility of performance is a result of an unanticipated event that could not have been foreseen or protected against in the contract." *Vemics, Inc.*, 2011 U.S. Dist. LEXIS 72611, at *14. As the Second Circuit has recognized, government action is the type of unforeseen event that would excuse performance under this common law doctrine:

> The common law of contract excuses a party from performing his contractual obligations because of "impossibility of performance" or

---

[36] Hirschel Dec. ¶ 3; Liberman Dec. ¶¶ 3-4.
[37] Malter Dec. ¶¶ 2, 4-5.

> "frustration of purpose." In general, impossibility may be equated with an inability to perform as promised due to intervening events, such as an act of state or destruction of the subject matter of the contract.

*United States v. Gen. Douglas MacArthur Senior Village, Inc.*, 508 F.2d 377, 381 (2d Cir. 1974) (citing Corbin on Contracts); *see also Inter-American Dev. Bank v. Nextg Telecom Ltd.*, 503 F.Supp.2d 687, 695 (S.D.N.Y. 2007) (citing *Gen. Douglas MacArthur Senior Village, Inc.* to explain doctrine of impossibility is met if it involves an "act of state"); *Moyer v. Little Falls*, 134 Misc. 2d 299, 301 (N.Y. Sup. Ct. Herk. Cty. Dec. 29, 1986) (explaining "performance should be excused [] if governmental action or other contingencies create a substantially unjust situation totally outside contemplation of the parties.").

Consistent with this, courts have sustained a party invoking the doctrine of impossibility where unforeseeable, supervening events make it impossible for parties to comply with it. For example, in *National Farmers Union Property & Casualty Co. v. Fuel Recovery Co.*, 432 N.W.2d 788, 791 (Minn. Ct. App. 1988), the court excused a fuel cleanup company's performance under an agreement because a second, unforeseen fuel-spill made it impossible or impracticable for the company to complete the fuel cleanup as originally contemplated in the agreement. Similarly, in *Moyer*, 134 Misc. 2d at 302, the Court excused the plaintiff's performance under the parties' sanitation contract because, after executing the contract, the government closed a landfill where the plaintiff dumped refuse, which in turn caused the only other landfill to have a monopoly. The landfill monopoly led to an unforeseen 666% price increase for the plaintiff, which made it impossible for him to comply with the parties' contract. *Id.* at 301-302. The *Moyer* court

-9-

held the price increase could not have been contemplated by the parties at the time they entered into the agreement. *Id*.

Here, Defendants had every intention of upholding their obligations under the Agreement when they executed it. They, however, like the parties in *National Farmers* and *Moyer*, could not have anticipated the COVID-19 global pandemic because COVID-19 did not exist when they executed the Agreement. They also could not have objectively foreseen the PAUSE Order and the resulting economic ramifications that it would have on them and their families. This unforeseen, intervening "act of state" is akin to the government's unforeseen, intervening act in *Moyer*. These unanticipated events have made it impossible for them to comply with the Agreement.

The PAUSE Order separates this case from the many others where courts refused to invoke the doctrine of impossibility. In those cases, the parties pointed to only their economic hardship. *See, e.g.*, *ZBD Constructors, Inc.*, 2011 U.S. Dist. LEXIS 40433, at *27-29 (rejecting the doctrine because the party sought to be excused from performance solely because of economic hardship). Here, unlike the *ZBD* plaintiff, it is financially impossible for Defendants to make the settlement payments because of an unanticipated global pandemic and an act of state – neither one of which they could have guarded against in the Agreement. The Motion should, therefore, be denied.

## CONCLUSION

Based on the foregoing, Defendants respectfully submit that the Court should not grant Plaintiffs' motion to enter the consent judgment and that Defendants' payment obligations under the Agreement be suspended until 60 days after the PAUSE Order on non-essential businesses is lifted.

Dated: New York, New York
       May 6, 2020

> Respectfully submitted,
> LIPSKY LOWE LLP
>
>
> s/ Douglas B. Lipsky
> Douglas B. Lipsky
> Sara Isaacson
> 420 Lexington Avenue, Suite 1830
> New York, New York 10170-1830
> Phone: 212.392.4772
> Fax: 212.444.1030
> doug@lipskylowe.com
> sara@lipskylowe.com