USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/8/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael Lantino and Joanne Cabello, on behalf of themselves and all others similarly situated,

                          Plaintiffs,

-against-

Clay LLC et al.,

                          Defendants.

1:18-cv-12247 (SDA)

OPINION AND ORDER

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

Pending before the Court is a motion by Plaintiffs Michael Lantino ("Lantino") and Joanne Cabello ("Cabello") (collectively, "Plaintiffs") for entry of a Consent Judgment against Defendants The Gym at Greenwich, LLC; The Gym at Port Chester, Inc.; and The Gym at Union Square, Inc. (collectively, the "Corporate Gym Defendants"), as well as individual Defendants Seth Hirschel ("Hirschel"), Stefan Malter ("Malter") and Barnet Liberman ("Liberman") (collectively, the "Individual Defendants"). (Pl. 4/29/20 Not. of Mot., ECF No. 98.) Defendants resist entry of the Consent Judgment, claiming that their performance under the Settlement Agreement that permits entry of the Judgment was rendered impossible by the COVID-19 pandemic and the resultant "New York State on PAUSE" Executive Order signed by New York Governor Andrew M. Cuomo that became effective on March 22, 2020 (the "PAUSE Executive Order").

For the reasons set forth below, Plaintiffs' motion is GRANTED.

**BACKGROUND**

This case, which was commenced on December 27, 2018, alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law.[1] (Compl. ¶ 1.) Plaintiffs asserted that the Corporate Gym Defendants and the Individual Defendants routinely and knowingly operated their fitness businesses without sufficient funds to cover employee payroll. (*See id*. ¶¶ 49-57.) They alleged that Defendants routinely paid their employees later than their regularly scheduled pay date and, on many occasions, because the corporate bank account was not sufficiently funded, employees' paychecks would bounce, leaving employees with no timely payment of wages and a bounced check fee. (*See id*.) They also alleged that at some point Defendants altogether stopped paying their employees for their time worked. (*See id*. ¶¶ 44-48.)

After the Complaint was filed by Lantino and Cabello, 38 other employees filed Consents to Sue in order to opt-in as Plaintiffs to assert FLSA claims against Defendants, and Plaintiffs filed a motion for conditional certification, pursuant to 29 U.S.C. § 216(b). (Pl. 6/19/19 Not. of Mot., ECF No. 70.) While this motion was pending, the parties appeared before me for a settlement conference on September 9, 2019 and reached a settlement in principle.

On September 9, 2019, an Order was issued on the parties' consent, pursuant to 28 U.S.C. § 636(c), referring all proceedings in this case to me, including the entry of judgment. (Order of Reference, ECF No. 84.) On October 3, 2019, Plaintiffs submitted a letter to me with regard to the fairness of the proposed settlement, along with the proposed Settlement Agreement (which had

---

[1] Although the Complaint purports to bring claims on behalf of a class of persons similarly situated, pursuant to Fed. R. Civ. P. 23 (*see* Compl., ECF No. 1, ¶¶ 34-42), no motion for Rule 23 class certification was filed prior to this case being settled, and it was settled as an FLSA collective action, and not on behalf of a Rule 23 class. (*See* 10/4/19 Order, ECF No. 91.)

not yet been fully executed). (Pl. 10/3/19 Ltr., ECF No. 90.) In their letter, Plaintiffs explained that, although they had calculated the total damages for the named and opt-in Plaintiffs to be $3,686,515.98, they had agreed to a total settlement fund in the amount of $300,000.00, to be paid out over 25 months, but, in the event of a default, the settlement amount would be increased to $1,000,000.00, pursuant to a Consent Judgment. (*Id*. at 1-2.)

On October 4, 2019, the Court entered an Order preliminarily approving the settlement, stating that final approval must await submission of a fully executed Settlement Agreement. (10/4/19 Order, ECF No. 91.) On November 5, 2019, the Settlement Agreement was filed with the Court, executed by the 40 Plaintiffs and opt-in Plaintiffs, as well as the Corporate Gym Defendants and Individual Defendants. (Settl. Agmt., ECF No. 92.)

The Settlement Agreement provides that Defendants shall pay the $300,000.00 Settlement Amount by an initial payment of $50,000.00, plus monthly installments of $8,695.65 (less applicable withholdings) for 23 months. (Settl. Agmt. at 2.) The Settlement Agreement has annexed to it a form of Consent Judgment executed by the Corporate Gym Defendants and the Individual Defendants. (Settl. Agmt. Ex. A, ECF No. 92, at 50 to 53 of 57.) In the event of default in payments under the Settlement Agreement, the Consent Judgment provides for the entry of judgment in the amount of $1,000,000.00, less any payments previously made. (*See id*.) The Settlement Agreement states that, if Defendants are in default, "Plaintiffs' Counsel may enter the Consent Judgment, without further notice." (Settl. Agmt. at 3.)

On April 17, 2020, Plaintiffs filed their form of Consent Judgment without any supporting letter or motion. (Consent Order, ECF No. 94.) On April 20, 2020, Defendants filed a letter requesting a conference regarding the Consent Judgment "to address why Defendants did not

3

make the required settlement payment" (Def. 4/20/20 Ltr., ECF No. 95, at 1), and the Court scheduled a telephone conference for April 28, 2020. (4/20/20 Order, ECF No. 96.) After the April 28 conference, the Court entered an Order providing that Plaintiffs were to file their motion for entry of the Consent Judgment by April 29, 2020; that Defendants were to file their opposition by May 6, 2020; and that Plaintiffs were to file any reply by May 8, 2020.[2] (4/28/20 Order, ECF No. 97.)

On April 29, 2020, Plaintiffs timely filed their motion for entry of the Consent Judgment, which is the motion presently pending before the Court. (*See* Pl. 4/29/20 Not. of Mot.; Goldring Decl., ECF No. 99.) Plaintiffs submitted evidentiary proof that Defendants had paid to date the sum of $76,086.49,[3] but that the Defendants were in default under the Settlement Agreement. (*See* Goldring Decl. ¶¶ 10-12.) Plaintiffs thus seek entry of the Consent Judgment in the amount of $923,913.51 (*i.e.*, $1,000,000.00 less the $76,086.49 previously paid). (*See id*. ¶ 14.)

---

[2] Defendants were granted a slight modification of the briefing schedule due to the personal circumstances of one of the Individual Defendants, *i.e.*, Malter. (5/4/20 Order, ECF No. 102.) The Court ordered that (1) Defendants' opposition was to be filed by May 6, 2020, as previously scheduled and that, thereafter, no later than May 7, 2020, Malter could file a declaration regarding his financial condition, as well as a supplemental letter setting forth any additional arguments he wished to make, and (2) Plaintiffs reply was to be filed no later than May 9, 2020, at 12 noon, but could be filed earlier. (*See id*.) As set forth below, Malter filed his opposition declaration on May 6, 2020, and Plaintiffs filed their reply on May 7, 2020.

[3] Plaintiffs offer two different figures as to the total amounts previously paid by Defendants. In paragraph 14 of the Goldring Declaration (*see* Goldring Decl. ¶ 14), and Plaintiffs' previously-submitted form of Consent Judgment (*see* Consent Order at 2), Plaintiffs state that Defendants paid a total of $76,086.95. However, in paragraph 10 of the Goldring Declaration, Plaintiffs state that Defendants paid a total of $76,086.49. (*See* Goldring Decl. ¶ 10.) The total of the four payments made by Defendants, as set forth in subparagraphs 10(a) through 10(d), is $76,086.49. Thus, the Court uses this lower amount to calculate the amount due under the Consent Judgment. In addition, the Court notes that subparagraphs 10(c) and 10(d) erroneously refer to certain payments having been made in calendar year 2019, when they in fact were made in 2020.

On May 6, 2020, Defendants filed their papers in opposition to Plaintiffs' motion. Their papers included an opposition memorandum of law (Opp. Mem., ECF No. 103), as well as Declarations from each of the three Individual Defendants, *i.e.*, Hirschel, Malter and Liberman, regarding their financial condition. (Declarations, ECF Nos. 104-06.) Defendants do not contest that they are in default under the Settlement Agreement, but argue that their performance should be excused based upon the doctrine of impossibility because of their inability to pay, ostensibly as a result of the COVID-19 pandemic and Governor Cuomo's PAUSE Executive Order. (*See* Opp. Mem. at 7-10.)

On May 7, 2020, Plaintiffs filed their reply. (Reply, ECF No. 107.) In their reply, Plaintiffs note that the Individual Defendants' Declarations make no "mention of their net worth, of their assets, of any trusts they control or are beneficiaries of, [of] companies they control, or [of] assets of companies they control." (*Id*.)

## LEGAL STANDARDS

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005) (citations omitted). "[U]nder New York law,[4] impossibility (which is treated synonymously with impracticability) is a defense to a breach of contract action 'only when . . . performance [is rendered] objectively impossible . . . by an unanticipated event that could not have been foreseen or guarded against in the contract.'" *Axginc Corp. v. Plaza Automall*, Ltd., 759 F. App'x 26, 29 (2d

---

[4] The Settlement Agreement provides that it is governed by New York law. (Settl. Agmt. at 5.)

5

Cir. 2018) (alteration in original) (quoting *Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902 (1987)).

"[T]he excuse of impossibility of performance is limited to the destruction of the means of performance by an act of God, vis major,[5] or by law." *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 281 (1968). "Thus, where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *Id.*; *see also Ebert v. Holiday Inn*, 628 F. App'x 21, 23 (2d Cir. 2015) ("Economic hardship, even to the extent of bankruptcy or insolvency, does not excuse performance.").

## **DISCUSSION**

It is undisputed that Defendants are in default under the Settlement Agreement. They failed to make a payment when due under the Settlement Agreement after notice and an opportunity to cure. (*See* Goldring Decl. ¶ 12.) By the express terms of the Settlement Agreement, Plaintiffs were entitled to entry of the Consent Judgment without even providing notice to the Defendants. (*See* Settl. Agmt. at 3.) At best, Defendants have established financial difficulties arising out of the COVID-19 pandemic and the PAUSE Executive Order that adversely affected their ability to make the payments called for under the Settlement Agreement. As such, Defendants' performance under the Settlement Agreement is not excused. *See Ebert*, 628 F. App'x at 23.

---

[5] "Vis major" means a "greater or superior force; an irresistible force." *Black's Law Dictionary*, at 1410 (5th ed. 1979).

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is GRANTED. The Court shall forthwith enter the Consent Judgment in the amount of $923,913.51.

**SO ORDERED.**

DATED:      New York, New York
            May 8, 2020

_____
STEWART D. AARON
United States Magistrate Judge